May it please the court, my name is Patrick Murray and I represent the plaintiff appellant Debra Baldwin and the minor children in this matter. If it pleases the court, I would like to reserve two minutes for rebuttal time. All right. Withdrawal is like a brief recitation of the facts, would you like me to begin with just the argument? No. Thank you. Well, help It wasn't stated explicitly in the district court's opinion. Your Honor, no, it was not. This was a lifelong friend, Ms. Baldwin, with the deceased and a close family relationship between them. In some circumstances, it is alleged that a number of circumstances occurred where the deceased believed that it would be in the children's best interest if Ms. Baldwin were the legal parent. Is that right? Correct, Your Honor. So if this is not a same-sex relationship, doesn't it take it out of the realm of most of the argument that's been before us, the case law, the references to statutory law, all of the purportedly analogous situations where you had formal adoption. Those were situations where the resulting family excluded the deceased. Correct, Your Honor. To some extent, we do believe it is outside a lot of the analogous case law. We believe to some extent this is an issue of first impression. Typically, you're looking at a situation with adoption where either somebody was given up at birth or you have some sort of relationship where a step-parent adopted to sever a tie with a natural parent. That was not the case in this situation, which is what we believe brings this case into a situation where the beneficiary status in this case is more in tune with what Pennsylvania law would allow for the contract of a life insurance policy, which was the intent, and with the number of factors we've listed. Which was the intent. That's sort of what you key in on, but let me ask you a factual question. In your briefing, at certain points, you indicated she couldn't have meant for there to be no beneficiary. In other places, as one of your opponents points out, there appears to maybe be some siblings who are making a claim. Is that correct? Yes, Your Honor. I apologize for the misunderstanding originally in this case. However, at the time we filed this action and the allegations and the complaint, no other claim had been made. These are some distant siblings that really were not a part of Ms. Trent's life while she was alive. Well, when you say distant siblings, I assume you mean emotionally distant. I mean, they're her siblings, right? Yes. Well, I believe they're half-brother and half-sister. I'm still finding the exact details of the relationship, but they were not part of any part of the life. In the abstract, Ms. Trent not, and of course, those are all extra record facts that she didn't know them or didn't have anything to do with them, right? Correct. Okay. In the abstract, dealing with the record we have before us, is it as severed the legal parent-child relationship with her children and leaving the beneficiary box blank on the policies that she intended other potential default beneficiaries to have the benefit of the policies to whom she still had the legal ties? If we're left to just simply assume, which possibly at this early stage we would be, but we believe we've put enough in the show that there's really no chance that that was her intent. A number of factors we've included that we don't believe, possibly contrary to what is in the brief, we aren't making an argument that a close family relationship or spending time together gets you into the realm of it. Those allegations are in the complaint as more support for what exactly was going on here and what Ms. Murray, forgive me for interrupting you, but do we have to deal with intent at this stage? I mean, you have told us that this is a contract. And I assume that you were going to tell us that contracts depend upon the intent of the contracting parties. Wouldn't this be for the I believe it would, Your Honor. The problem we have in this case is that a number of the other cases that have been cited in here had at least a partial non-jury trial or had some other relevant discovery going on to determine whether or not an actual basis or some sort of evidence was produced. We haven't had that opportunity in this case. All we've had is our complaint and we haven't had the opportunity to just throw the actual evidence that we believe we'll be able to present at trial or at least through discovery so that the court can determine what the intent was under the SMA Life case, which indicates that Pennsylvania law is applicable in determining the policy under this ERISA plan. Mr. Murray, it doesn't The district court judge relied upon the intestacy statutes, did he not? Correct. The district court did rely upon intestacy statutes, which we believe is. And your claim is that this is not a matter of intestacy when you look at the beneficiaries. Am I right in that? You're correct, Your Honor. Well, Mr. Murray, if Judge, well, your argument hinges, does it not, on there being some ambiguity in the language of the documents that requires or would require an evaluation of intent, right? I mean, if the word children is not ambiguous, do you have any argument? I believe we do. If I could answer that twofold, Your Honor. One, we do believe it is ambiguous because it's a contract and contract terms are to be determined based on the facts surrounding the contract itself. However, we also believe that it does not necessarily need to be ambiguous because the PA law in this case is clear. Intestate, you don't look at intent. Intestate, if we're looking at a testamentary disposition, if you're not the legal issue, you cannot collect these proceeds. You cannot collect anything from the estate. However, it is clear through a number of Pennsylvania cases dealing with life insurance policies that we clearly look at intent. So the wording of the document itself does not need to be ambiguous. I think child or children is, but the question here was, was it ambiguous to Ms. Trent because of the relationship she had and that she believed she was leaving it to her children? And we believe we can prove that as we've alleged in the complaint. And if we can't prove that, then we're gone in summary judgment and we know that. How do we deal with LeBeau? I mean, there's a case where our court said, in effect, once that parent-child relationship is severed as a legal matter, the beneficiary of a life insurance policy, the child can't claim I'm a child anymore. Just that, it seems like that's just that straightforward under LeBeau. How do you address that? Well, Your Honor, I think I can address that in a couple of ways. First of all, most importantly, I believe that opinion ended up looking back to New Jersey state law as for determining. And New Jersey law applicable there is not the same as Pennsylvania law. Pennsylvania, we have a couple of clear cases, the Garland case and the Hall case, that show clearly even one dealing with a husband-wife, one dealing with an adoption, where the law is clear that a life insurance policy in Pennsylvania is read to be different than the intestate. And I think that is the main distinction in the LeBeau cases, that they were applying New Jersey law. Well, if you applied HNR, isn't HNR favorable to you if we had to apply New Jersey law? I mean, obviously, LeBeau was 50 years, 50, yeah, about 50 years ago. I can't hear you, Judge Greenaway. I said it was 50 years ago. LeBeau. LeBeau. Yes, and I believe LeBeau was not dealing with RISA because of that situation. I think it would have been analogous in the same sense that my Pennsylvania cases would be analogous. However, I think that it is correct, if we look at a number of other situations that the defense has taken care of, a number of their cases, specifically, you know, Rivera versus AT&T, where we're looking at the quote on page 1070 of specifically designated or intended. That was a situation where I believe, as maybe we discussed earlier, there was a life partner and her kids that were denied life insurance policy proceeds. That actually got to the point where they looked at a record and there was nothing in the record that dealt with intent. Although that's outside the realm of what's precedent in this court, I think that the defense has partially made our argument in this case. If you look at Ramsey v. Mayer that both defendants point to, there's a quote on page 11 of that opinion saying, no evidence that they would have named or would have been named. That's another point where they got to the evidence and looked at it. We haven't had an opportunity to do that because this was at motion to dismiss stage. And then Paul got caught out of time. Mr. Murray, am I mistaken or did the district court rule on this aspect of it by saying that there was no standing and that standing would then import a zone of interest? Am I correct in that? I believe that the district court indicated that there was no standing. I don't know that the district court looked at zone of interest in the way that we do. We agree. I know that. I'm aware of that. But shouldn't you be centering your argument on why there is standing? And if there is standing, perhaps then that you might be successful in getting this back before a fact finder. Correct. And we believe that there is standing because the key to the zone of interest when you're looking at an ERISA claim is not only to look at the language, but it is to see if a colorable claim can be made that you are a beneficiary or participant. Nobody's arguing about participant here. And we know that Firestone and Leutner have looked at this to say that you can't just claim to be a beneficiary. But we think that this is a special set of facts and actually maybe goes more to the Leutner case where the court held that in the right circumstances, we can determine that this would have been a beneficiary. What's your best – is that your best case for establishing that they are children under the plan and therefore that they have a colorable claim? To some extent it is, except for I don't know that they have to be children as the plan intended them to be because we have to look at this twofold. ERISA is not meant to just shut people out if their name is not there. If that was the case, anybody who's denied would never be able to bring a claim and would never have standing. Our best case is that the policy allows for us to see if there's a colorable claim to be a beneficiary. And I see I'm out of time. Well, I have one follow-up for you. You just cited Leutner, but in Leutner, our court very specifically said, you seem to say somehow that the zone of interest goes beyond the statutory frame that ERISA sets out in Section 502A1. But didn't Leutner say pretty specifically that that zone of interest and the statutory definition are one and the same? To some extent they did. I think they, my reading of the Let me read you a language and you tell me what it means to you. This is from page 126 of Leutner. When we stated in Rite Aid that the zone of interest inquiry in the prudential standing analysis for Section 502A1 claims is inextricably tied to whether a plaintiff can meet the definitions of either participant or beneficiary, we meant that the statutory standing requirements in ERISA Section 502A1 were essentially a codification of ERISA's zone of interest. And then it goes on to say what they didn't mean. But doesn't that say zone of interest, 502A1, one and the same? I believe it does, which means to me the way I'm reading it, especially when I couple it with a few other things that were in the opinion, such as in the right case, if plaintiff can plead in good faith that they should be a beneficiary or that it is not meant for ERISA to shield all claims from people not named in the policy, that we limit the zone of interest not to the typical zone of interest standard that is a wide breadth, but to look at whether or not that these children in this particular case on these special facts were thought of as what beneficiaries should mean in ERISA. And I think that we should be able to, based on the case law, to look at the intent of the individual having the policy to see if they were intended to be a beneficiary. And that's the only portion of the zone of interest. Were these children thought of? A person who doesn't know the law in detail, like Ms. Trent, that doesn't have everything explained to her, that just assumes that children, I still treat them as my children, they're the ones that are going to recover, at least our allegations are that. And our allegations are that there was nobody else intended by her. If she really thought that to be, was this ERISA standard really set up to shut these children out and give it to people that she didn't really know anymore and had no intent of giving it to? Who's going to get this money if your friends on the other side of the aisle are right? Who's going to get this money? I'd like to clear up a correction in my complaint at that time. We weren't sure that anybody else was making a claim at the time, so it's a little bit different from the complaint. But I think we've all agreed that now it would go to a half-brother and half-sister, that since they've been located during this, I believe it would be interpled and then we could have a factual determination. If we were to win and be sent back down for fact-finding, I believe that the defendants would interplead those two individuals. We could get to the bottom of this really quick. Mr. Murray, this is the first I've heard of them being half-brother and half-sister. I had thought that they were siblings, that is, that they were her brother and her sister. You're telling me now that they are the product of a different family? Does that appear in the record, incidentally? Your Honor, I don't believe that there's much about them at all in the record because the record is essentially our complaint and we didn't know much about them. To be honest, I still don't know a ton about them. I believe from speaking to my client that they are half-brother, half-sister, but I don't dispute that they would fall under a sibling denomination either way and that's not meant to be stated as something I know of for sure as fact because I haven't had the opportunity to have discovery in this case. Don't you think that perhaps before we come to a firm conclusion in this case that we ought to have benefit of a more expanded record? That's our entire argument, Your Honor. I don't think this case should have been disposed of at a motion-to-dismiss level. I think we should have the opportunity to find out all these factors and then if we don't meet the standards and we don't have evidence to prove that these children were the intended beneficiaries, we're out of court and we're not here. But without that opportunity, anybody who doesn't have their name in a contract can't bring a claim. That's essentially the argument that's being made by the other side. Thank you. Thank you, Mr. Murray. Thank you, Your Honors. Ms. Rice, did I say your name right, ma'am? Reese. May it please the Court. My name is Stephanie Reese and I'm representing Defendant Appelli with Insurance Company of North America. Your Honor, the crux of the issue before this Court is really what it means to be a beneficiary under ERISA and under the statutory language, there's two possibilities. You're either named by a participant or you're named under the terms of a plan as an individual who may be... We've read that and we know what it says, but let's get to the heart of their argument as I take it, which is, look, children could mean some technical legal definition of children buried in the statutes of Pennsylvania or children could mean the sort of DNA fact that no law book can ever change and that, therefore, what children means in this instance is not beyond dispute and since there is some dispute about it, it's not something that should have been thrown out at the motion to dismiss stage. That they've got evidence to demonstrate that that ambiguity in the contract could be resolved the way they say it is. Where is the legal error in that analysis? And I apologize, I'm sure I haven't done it as well as Mr. Murray did, but that's how I take the gist of their argument. Well, I think the error in that is the argument that there's any ambiguity at all. I mean, the fact that you can come up with another meaning for the term children, children can mean, let's say, anyone under 18, but I think it would be absurd to say that under this policy anyone who's under 18 can take money from this policy because they're children. I think children has one plain and unambiguous meaning which is tied to legal status. Just as if you want to determine who's the spouse under this default clause and what entitlement to take, you look to what their legal status is, you look to the underlying law and say, okay, this person lives in Pennsylvania under Pennsylvania law, this person is or isn't a spouse. The same is true of the definition of child. If you look to, in this case, Pennsylvania statute, the adoption statute, and specifically it's 23 PA CSA 2902 talks about when there's an order of adoption, you specifically, the order of adoption directs that the person proposed to be adopted shall have all the rights of the child of the adopting parent and the adopting parent only and only duties to that adopting parent. So there's only one parent-child relationship. The adopting parent, it's their child. And conversely, under the intestacy statute, which by the way wasn't cited for the purpose that the intestacy statute covers, but an example of how the word children, the meaning it has under law, under that statute an adopted person shall not be considered to be continuing to be the child of his natural parent. Here there's no dispute, the minors were given up for adoption by the decedent, Ms. Trent, many years prior to her death. Wait a minute, Ms. Freese. Didn't the district court rule on the intestacy statute? Well, Your Honor, respectfully, as I read the decision, what the district court said is that this is an ERISA case. So the first thing we do is we look to the plain meaning of the language and to the federal common law. Did he look to it as a contract, as anything that would require an analysis under contract law? I think you only consider it as a contract to the extent that... So did he, Ms. Freese? I don't believe Judge Conte did that. My understanding, my reading of the decision is that she said this is an ERISA case. We look to the language, the plain meaning of the language as understood under the federal common law first. The Lebeau case is a federal case. Admittedly, it's a pre-ERISA case. It's one decided under the Federal Employee Group Life Insurance Act, but still a federal case interpreting a federal statute. And the situation there was almost exactly identical to that here. There, it was a situation where the father had given up his biological daughter for adoption to the stepfather. But the father didn't live with the child afterwards. In Lebeau and all of these other cases, there's a clear separation. The natural parent is out of the picture. The adoptive parent is in the picture. And it seems to me that's what's distinct from this situation. It is a unique situation, frankly, particularly since it's not a same-sex relationship, that there together, the natural parent remained in the house, continued to parent, and it seems like the only legal distinction here is that the birth certificate had Ms. Baldwin's name on it instead of Ms. Trent's name, but in every other tangible way in which one could judge this, Ms. Trent remained the parent of the children. But, Your Honor, I don't think the relationship, whether you colloquially call it as akin to a parent relationship, you can have a best friend who basically is akin to a parent relationship, but that doesn't matter. What matters is the legal relationship. You said it was akin to Lebeau. In Lebeau, there was a clear separation. That's why I brought out the facts. How do those reconcile? Well, Your Honor, there's two points I want to make. I think in Lebeau, what the court said, although they mentioned those other factors in passing, they said what matters is familiar relationships, which generally, when we're trying to determine a familial relationship, that's a creature of state law. So here, the court said, look, regardless of anything else, when this individual, the father, gave the biological offspring off for adoption, that severed the legal relationship, and the biological offspring ceased to be the child of the decedent as a matter of law. The same is true here. When you want to talk about if there's an ongoing relationship that's friendly or maybe even parental, that doesn't matter for purposes of interpreting the term child, because there can be only one parent and one child as a matter of law, because there are legal obligations that flow there. Get into the cases, the In Re Hull case, and the other name escapes me just for the moment, Evans, thank you, which your opponent has cited in the briefs and talked to us about again here today to say, hey, maybe New Jersey law was really clear in LaBeouf, but Pennsylvania law, particularly decisional law, shows there's some give in that, and the defendants are not acknowledging any give in the Pennsylvania law. What's your response? Every single one of the cases that's been cited and discussed, the case, the In Re Hull's estate, Garland v. Craven, these were all cases that involved an individual actually naming a beneficiary and the name was ambiguous. For example, in the Garland v. Craven case, the person said to my wife, Sarah Craven, well, there was no Sarah Craven. He had a girlfriend who he was living with the participant and you need to figure out what their intent was. That's a very different situation from interpreting language in a policy that's plain and unambiguous and has a clear legal meaning. So the cases that focus on intent are focused on intent where the decedent actually expressed some intent, which is not the case here. I think my opponent's other argument has to do with he suggested that apart from the planned language, there might also be a basis for standing as an individual who, someone that the decedent would have named, should she have named a beneficiary, and I also just want to point out that there's much case law suggesting that that is not possible. I mean, first, I guess his argument is most analogous to but-for-standing, which is the Luthner case, but in a Luthner case, in order to have but-for-standing, you have to initially be either participant or beneficiary and be divested of that status by some misconduct by the planned fiduciary, and we don't have that here. There's no question that the minors were ever beneficiaries or participants, so there was necessarily nothing that the fiduciaries could have done to divest them of that status. Okay. All right. Thank you, Ms. Reese. We'll hear from counsel for UPMC. May it please the Court. I wanted to point out a couple of additional things. Why don't you begin by identifying yourself? My name's Andrew Connell. I represent UPMC, Your Honor. How did you pronounce that? Connell. Yeah, about as different as it possibly can be from what it looks like, unfortunately. I wanted to touch on some of the conversation that we've been having about the Leboeuf case particularly here. One of the things that Mr. Murray said is he said, well, Leboeuf looked at New Jersey law, and then he went and said that here, Pennsylvania law is different. If you look at what Leboeuf looked at, Leboeuf looked at New Jersey, the New Jersey intestacy statute. It didn't look at New Jersey case law. It went to the most analogous thing defining child that it could find, which was the New Jersey intestacy statute. It was a pre-ERISA case, wasn't it, Mr. Connell? It was indeed. It was 1959, and it construed the Federal Employees Group Life Insurance Act. It's a life insurance policy that's fairly analogous to this case. The Pennsylvania intestacy statute, when you go to that, which is what the Leboeuf Court did, only in New Jersey, it's exactly the same. It says that if you were an adopted child, once you were adopted, and the language is very clear. It says that the adopted child is literally severed from the family tree of its natural parents and grafted onto the family tree of its adopted parents. It's very clear. Are we bound by that? The fact remains that the district court in this case seemed wedded to an intestacy analysis. And ERISA, as we know, requires a contract analysis. Am I not correct in that? What I think that Judge Conte did, Judge Garth, was she looked to this court's precedents, particularly the Koenig, the automatic data processing case, and determined that when evaluating what the words of an ERISA plan mean, you look to federal common law. And she said, okay, there's no case that's ever been decided by this court that evaluates the definition of the word child in an ERISA context. Leboeuf is as close as we get, but in the absence of federal common law on the issue, she said, I can look to state law, to analogous state law, to sort of fill in the gaps in the federal common law. And that's what she did. And she used the Pennsylvania intestacy statute as a gap filler. And I think correctly, because it is very analogous to the situation. The other thing that we've been talking about here is when Mr. Murray was arguing, he was assuming that the intent of Ms. Trent, in this case, is what governs and that the intent matters. And I'd like to point out that under the ERISA statutory standing scheme, intended beneficiaries do not have standing to file lawsuits under ERISA. Beneficiaries have standing to file lawsuits under ERISA. And the SMA Life v. Pillar case, which he cites in support of his argument, doesn't even deal with ERISA. It's a post-ERISA case, but it has nothing to do with ERISA at all.  entitled to a benefit. There's a certain contingency built into that language. And the case law talks about colorable claim. To win, you have to make the assertion that there's absolutely no colorable claim that Ms. Baldwin can make, right? That's correct, Your Honor. And the Supreme Court said that in the Firestone-Tyrone-Rubber v. Brute case that colorable claim means that you will either prevail in a suit for benefits or that your eligibility requirements will be fulfilled at some point in the future. The minors in this case are either children or they're not children. There's no chance that they become children in the future. So I think that the only issue here is whether to prevail in a suit for benefits and as we've discussed, as not having the legal status of children. So again, it hinges on the question of the meaning of children, right? Children is a legally defined term and it can't possibly mean a biologically based factual assertion. I think that's right, Judge Jordan, and actually I think that's the only way it really can be to make this workable. Because if you think about it, if you accept the argument that children means solely a biological concept and you extend that to its natural conclusion, what happens if you have somebody who says you have to accept that it's either the biological or the legal? I guess the pitch I'm hearing from your opponent is it could be either, it's ambiguous, let us get in front of a fact finder and show what she meant. But if it, well, what she meant, Ms. Trent, wouldn't have anything to do with what the word child means in the plan. It's a bilateral plan, right? It's a contraction, it's a contractual arrangement between the plan administrator or whoever is putting out the plan and her? Is it not? It's a contractual agreement, Your Honor, but as I've mentioned and as Judge Conte discussed in some detail. Her intent's irrelevant. Right, the definition is determined by reference to federal common law on ERISA. It's not determined by reference to the decedent's intent. This is not a run-of-the-mill life insurance policy that's not governed by ERISA. There's a statutory framework that applies here. Well, if you put intent aside and you look at the Pennsylvania and New Jersey state cases that are referenced and one of the New Jersey cases references Vermont case as well. I mean, clearly there are contexts in which children, as the children of Ms. Trent are here can be defined in this context as beneficiaries and have been deemed to have what would be defined here as a colorable claim. You make it seem as if if it's not biological, that's the end of the inquiry. Isn't there more to it than that? Actually, with respect, Your Honor, I think I'm saying unless it's a legal relationship it's the end of the inquiry. I think that the biological concept in defining child in purely biological terms is an unworkable result. I mean, if if that's the case and you can define child in purely biological terms, then you could easily come to the conclusion that somebody who's a sperm donor, for instance, who has biological children would be eligible to... So there's more to it than that? That's correct, yes. That's what I would say, Your Honor. Mr. Cannell, I've been curious about something ever since I picked up briefs in this case. Doesn't the company that you represent do anything about an application for life insurance where there is no beneficiary shown? Is there an obligation on your company or has there ever been a letter ever written saying, hey, look, Mr. Trent, you never told us who you want the monies to go to in the event you were to pass away. Has there been any communication like that or any telephone call to it? I believe the record shows what happens is the forms that the participants, the employees, have to fill out specifically and very clearly says you must designate a beneficiary or else the beneficiary of your policies will be determined. You'll have to go to the plan essentially to figure out who's going to receive the money. So they're told up front very clearly that they are to designate beneficiaries and there's a space for that. And clearly Ms. Trent knew how to do that because in her basic life insurance policy she designated Ms. Baldwin. So I don't think that there's any real argument here. I understand all that. I'm fully aware of all that. I want to know when that was processed by your company, didn't they notice or wasn't it noticeable that there had been no indication of a beneficiary and was it ever called to Ms. Trent's attention? I don't want to say something that's incorrect, Your Honor, so I don't know off the top of my head whether it was called to Ms. Trent's attention. I don't believe it was because the fact that somebody doesn't designate a beneficiary doesn't necessarily mean that they didn't know what they were doing. I mean obviously if you want your life insurance benefits to go to your spouse, which is very logical, and it's already going to the spouse by the terms of the plan, you don't really need to designate a beneficiary. So that would involve sort of trying to figure out what they mean by not designating a beneficiary and that leads to a lot of complications. I understand that. Thank you. All right. Thank you, Mr. Connell. We'll hear Mr. Murray on our panel. Thank you, Your Honors. I would briefly like to address just a couple of the points made by the appellees in this case. First, there was an indication by Ms. Reese that the adoption statute immediately severs the tie and that they're no longer able to recover as the children under this policy. We believe that the SMAV pillar case is very, very clear on this that intestacy means nothing when we're talking about a contract. If intestacy meant something in the situation or if there was some case law out there, I don't believe that the case could... I don't believe the case would be in front of Your Honors. In pillar, a husband and wife were together. There were several policies. The husband and wife got divorced. During the divorce, there was an inventory of several policies. Then the divorce was complete. Then the husband had another policy. Subsequent, upon his death, Pennsylvania still looked... the court still looked at the Pennsylvania law to see what was happening, then moved forward and determined who the beneficiary was under Pennsylvania law. There's a fact finding there that after the divorce, he didn't mean for it to go to the wife anymore because he was divorced with her, even though he had taken it out prior to the divorce. Isn't there something pointedly different between a divorce and the termination of parental rights associated with adoption? I mean, it's true that an adoption terminates the legal marriage and so somebody who was a spouse before isn't a spouse after divorce as a legal matter, but there are sadly lots and lots and lots of divorces that occur, but termination of parental rights through adoption is a pretty dramatic and final step that people take. It's not something that happens with the regularity of the termination of marriage, is it? It's not, and I think the portion of it that is analogous though is that the court still took the time to look at Pennsylvania law to determine who the beneficiary was and at least found some facts in the case and that's all we're asking in this case. How do you answer Mr. Connell's point that intent is just irrelevant because ERISA is a statute that sets up a statutory framework. This isn't just between two private contracting parties. There's more to it than that. I would answer that very carefully in the fact that we're not arguing that intent is read into an ERISA statute or an ERISA plan in general. What we're saying is that an intended beneficiary may not necessarily be someone who has a claim. However, when you're looking at who a child is under a life insurance contract, whether it be ERISA or another life insurance contract that intent does play a part. Maybe on another portion of ERISA, intent doesn't play a part at all, but when you're looking to fill in gaps of a legal contract, which a life insurance policy is, you look to state law to fill in those gaps. The situation here is we have a very unique situation. This isn't an adoption that happened at birth where they completely severed ties. We're looking at a situation here where we have the intended beneficiary that we're arguing fills in the gap. I think that is where we believe we have a colorable claim. I don't believe that if we made an argument that had the person decided to go ahead and change something, they would have been the intended beneficiary because the person didn't get around to doing so that you don't get to move forward. However, in this case, our argument is that she intended these children to have the money in the event of her unfortunate passing at the time she fulfilled the contract. That makes the children beneficiaries under the policy. We believe that if we have the facts to show that that was her intent, then the children would be the beneficiaries. Therefore, we believe we have standing based on those specific allegations in this case. Is your primary objective the opportunity to Judge Conte dismiss this with prejudice or is it to just get back to move on with the litigation process? We'd like to be able to move on with the litigation process to have discovery and be able to put forth a number of the factors we believe are going to make it not even questionable that these children were intended to be the beneficiaries. At the time we filed the complaint, we weren't sure if it was going to go to the state because there was nobody to recover under the estate. Now we certainly know that there are some siblings out there that would make a claim, but we believe that the discovery is the opportunity that we should have in this case based on the specific allegations we've made. Okay. Thanks very much Mr. Murray. Thank you, Your Honor. I thank all counsel for a well argued case. We appreciate it. We'll take it under advisement and call the next case.